**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

VERMONT HARD CIDER COMPANY,    :
LLC, d/b/a GREEN MOUNTAIN      :
BEVERAGE,                       :
                               :
           Plaintiff,     :
                               :
        v.              :    Case No. 2:11-CV-00150
                               :
LEONARD J. CIOLEK,         :
                               :
           Defendant.    :

**OPINION and ORDER**

Vermont Hard Cider Company, LLC d/b/a Green Mountain Beverage ("GMB") sued Leonard Ciolek, alleging breach of contract, breach of duty of loyalty, violation of the Vermont Trade Secrets Act, and conversion. Ciolek, proceeding *pro se*, has responded with several counterclaims. He alleges first that GMB's lawsuit is retaliatory, and thus in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Vermont Fair Employment Practices Act ("VFEPA"), Vt. Stat. Ann. tit. 21, § 495. Further, Ciolek raises claims of defamation and intentional infliction of emotional distress. GMB has moved to dismiss all of Ciolek's counterclaims.

For the reasons that follow, GMB's motion to dismiss is GRANTED, and Ciolek is afforded thirty days in which to file an amended counterclaim.

**FACTUAL BACKGROUND**

For purposes of this motion to dismiss, the Court accepts as true all allegations set forth in the Counterclaim. *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). In July 2010, GMB hired Ciolek as National Accounts Manager, the second highest ranking position within the sales department at GMB. Ciolek was employed by GMB on an at-will basis. In March 2011, Ciolek resigned to pursue other business opportunities. Ciolek alleges that he was "subjected to harassment, hostility and threats against his person from GMB" for seeking and obtaining other employment while employed by GMB. (Answer with Affirmative Defenses and Countercl. ("Countercl.") ¶ 22.) Additionally, GMB subsequently sued Ciolek for, *inter alia*, breach of duty of loyalty and violation of the Vermont Trade Secrets Act. Ciolek believes the lawsuit is retaliatory in nature.

In Counts I and II of the Counterclaim, Ciolek alleges that GMB's actions surrounding his decision to resign were in violation of Title VII and the VFEPA respectively. In Count III of the Counterclaim, Ciolek asserts that "GMB has defamed [him] by making slanderous and libelous statements concerning [him]," and that "GMB made the statements with the knowledge and intent that they be republished." (Countercl. ¶¶ 30, 33.) Ciolek

alleges that, "possibly among others," GMB made the following

statements:

　　a) [Ciolek] brazenly stole ingredients and nutritional
　　　 information from Woodchuck;
　　b) [Ciolek] promoted his launch to GMB's customers;
　　c) [Ciolek] did his best to cover his tracks;
　　d) [Ciolek] stole trade secrets;
　　e) For over half his tenure with Woodchuck, [Ciolek] mined
　　　 proprietary secrets and arranged private deals to launch
　　　 his own brewery.

(Countercl. ¶ 32.)  Ciolek claims that he has "suffered special

harm as a result including loss of economic value and harm to

his good name."  (Countercl. ¶ 37.)  Finally, in Count IV of the

Counterclaim, Ciolek asserts that "GMB's conduct as alleged was

outrageous . . . was done intentionally and/or with reckless

disregard of its affect [sic] upon Ciolek," and that "Ciolek has

suffered emotional distress" as a result.  (Countercl. ¶¶ 40-

42.)

**DISCUSSION**

**I. Standard of Review**

　　The standard for reviewing a motion to dismiss pursuant to

Rule 12(b)(6) is well-known, and has recently been articulated

by this court:

　　　　In *Ashcroft v. Iqbal*, the Supreme Court set forth
　　a "two-pronged" approach for analyzing a Rule 12(b)(6)
　　motion to dismiss.  129 S.Ct. 1937, 1949-50 (2009).
　　First, a court must accept a plaintiff's factual
　　allegations as true and draw all reasonable inferences
　　from those allegations in the plaintiff's favor.  This
　　assumption of truth, however, does not apply to legal
　　conclusions, and threadbare recitals of the elements

of a cause of action, supported by mere conclusory
statements, do not suffice.

   Second, a court must determine whether the
complaint's well-pleaded factual allegations . . .
plausibly give rise to an entitlement to relief.  A
claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable
for the misconduct alleged.  The plausibility standard
is not akin a "probability requirement," but it asks
for more than a sheer possibility that the defendant
acted unlawfully.

*Gadreault v. Grearson*, No. 2:11-cv-63, 2011 WL 4915746, at *4

(D. Vt. Oct. 14, 2011) (internal quotation marks and citations

omitted).  Additionally, "[i]t is well established that the

submissions of a *pro se* litigant must be construed liberally and

interpreted to raise the strongest arguments that they *suggest*."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir.

2006) (internal quotation marks omitted) (citing cases).

## II. The Title VII Claim

   GMB argues that Ciolek's Title VII claim should be

dismissed because he has failed to allege facts establishing a

prima facie case as set forth in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792 (1973).  To survive a motion to dismiss

under that standard, a plaintiff in a retaliation action would

have to show "(1) participation in a protected activity; (2)

that the defendant knew of the protected activity; (3) an

adverse employment action; and (4) a causal connection between

the protected activity and the adverse employment action."

*McMenemy v. City of Rochester,* 241 F.3d 279, 282-83 (2d

Cir.2001) (citing *Gordon v. New York City Bd. of Educ.,* 232 F.3d

111, 113 (2d Cir.2000)).  However, it is unclear whether the

*prima facie* case is the appropriate standard by which to judge

the sufficiency of a pleading because recent Supreme Court cases

have upset the state of the law.  *See Hedges v. Town of Madison*,

No. 10-1566-cv, 2012 WL 101199, *1 (2d Cir. Jan. 13, 2012)

(summary order) ("The pleading standard for employment

discrimination complaints is somewhat of an open question in our

circuit.")

In *Swierkiewicz v. Sorema*, the Supreme Court held that "an

employment discrimination plaintiff need not plead a prima facie

case of discrimination."  *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 515 (2002).  However, "*Swierkiewicz* came before *Bell

Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v.

Iqbal,* 129 S.Ct. 1937 (2009) . . . and it relied on the *Conley*

standard of pleading which those cases rejected."  *Hedges*, 2012

WL 101199, at *1.  (citing *Swierkiewicz,* 534 U.S. at 512).

"*Swierkiewicz's* reliance on *Conley* suggests that, at a minimum,

employment discrimination claims must meet the standard of

pleading set forth in *Twombly* and *Iqbal,* even if pleading a

prima facie case is not required."  *Id*.  Additionally, even

under the lesser pleading standards of *Swierkiewicz*, "[a]

plaintiff must allege . . . those facts *necessary* to a finding

of liability." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464
F.3d 338, 343 (2d Cir. 2008) (citing *Dura Pharm., Inc. v.
Broudo,* 544 U.S. 336, 346-47 (2005)).

Not every element of the *prima facie* case must necessarily
be proved in every employment discrimination case.
*Swierkiewicz*, 534 U.S. at 511 (citing *Trans World Airlines, Inc.
v. Thurston,* 469 U.S. 111, 121 (1985)) ("For instance, if a
plaintiff is able to produce direct evidence of discrimination,
he may prevail without proving all the elements of a prima facie
case."). However, one element of the *prima facie* case that is
always necessary to a finding of liability in a retaliation
claim is participation in a protected activity. 42 U.S.C. §
2000e-3(a). Ciolek has failed to allege that he participated in
a protected activity.

Ciolek does allege that while employed at GMB, he "was
subjected to harassment, hostility and threats against his
person from GMB for engaging in protected activities."
(Counterclaim ¶ 22.) However, the only activity he alleges as
"protected" is "seek[ing] and obtain[ing] other employment."
(Counterclaim ¶ 21.) Seeking and obtaining employment is not an
activity protected by Title VII. *See* 42 U.S.C. § 2000e-3(a).
Because Ciolek has failed to plead participation in a protected
activity, he has failed to plead a necessary element of a Title

VII retaliation claim. Accordingly, his Title VII claim is
dismissed.

It should be noted that GMB also argued that Ciolek's Title
VII claim should be dismissed for failure to plead exhaustion of
administrative remedies. However, given the other factual
inadequacies of Ciolek's Title VII pleadings, the Court need not
address the issue of administrative exhaustion at this time.

## III. The VFEPA Claim

GMB argues that Ciolek's claim under the VFEPA should be
dismissed for the same reasons his Title VII claim should be
dismissed. The Court agrees. First, it should be noted that
the "[V]FEPA is patterned on Title VII of the Civil Rights Act
of 1964, and the standards and burdens of proof under FEPA are
identical to those under Title VII." *Hodgdon v. Mt. Mansfield
Co., Inc.*, 624 A.2d 1124, 1128 (Vt. 1992). Like Title VII, the
VFEPA protects certain classes of people, and certain
activities. Vt. Stat. Ann. tit. 21, § 495 *et seq*. Again,
Ciolek has failed to allege that he belongs to any class
protected by the VFEPA, or that he participated in any activity
protected by the VFEPA. Accordingly, his VFEPA claim is
dismissed.

## IV. Defamation

In Count III of the Counterclaim, Ciolek alleges that "GMB
has defamed [him] by making slanderous and libelous statements

7

concerning [him]." (Countercl. ¶ 30.) GMB argues that Ciolek's

defamation claim should be dismissed because all of the alleged

defamatory statements came from its original Verified Complaint

("Complaint"), and thus are absolutely privileged. GMB points

out that "[d]efamatory statements published by parties in the

course of judicial proceedings . . . are absolutely privileged,

so long as they bear some relation to the proceedings." *Okemo*

*Mountain, Inc. v. Sikorski*, No. 1:93-CV-22, 2006 WL 335858, at

*3 (D. Vt. February 14, 2006) (citing *Letorneau v. Hickey*, 807

A.2d 437, 441 (Vt. 2002)). Privilege is an affirmative defense.

*See Lent v. Huntoon*, 470 A.2d 1162, 1169 (Vt. 1983). "An

affirmative defense may be raised by a pre-answer motion to

dismiss under Rule 12(b)(6), without resort to summary judgment

procedure, if the defense appears on the face of the complaint."

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.

1998). The question is whether the defense of absolute

privilege appears from the face of Ciolek's Counterclaim.

Ciolek alleges that GMB made the following statements about

him: "1) he brazenly stole ingredients and nutritional

information from Woodchuck; 2) he promoted his launch to GMB's

customers; 3) he did his best to cover his tracks; 4) he stole

trade secrets; and 5) for over half his tenure with Woodchuck,

he mined proprietary secrets and arranged private deals to

launch his own brewery." (Countercl. ¶ 32.) Each of these

8

statements can be traced to the Complaint. *See* (Countercl. ¶¶ 45, 52, 73, 87); *See generally* (Countercl. ¶¶ 36-72.)

Ciolek argues that the defamatory statements set forth in the Counterclaim do not stem from the Complaint, but rather, from "several news sources which republished GMB's defamatory statements." (Def.'s Mem. in Opp'n to Pl.'s Mot. to Dismiss Countercl. 7.) Ciolek further argues that "it is unclear, and therefore, particularly harmful, whether the complaint was just being quoted [by the news sources]." *Id.* However, two of the articles cited by Ciolek (and provided in an appendix to his memorandum in opposition to the present motion), plainly reference "a 24-page complaint filed in court" or a "lawsuit filed in U.S. District Court," as their source of information. The second two news sources, in turn, reference one of the earlier news sources (and thus the Complaint) as their source of information.

Since the alleged defamatory statements were "published by [a party] in the course of judicial proceedings," and "bear some relation to the proceedings," they are absolutely privileged. *Sikorski*, 2006 WL 335858 at *3. Ciolek's defamation claim is dismissed.

## V. Intentional Infliction of Emotional Distress

In Count IV of the Counterclaim, Ciolek alleges that he "has suffered emotional distress resulting from GMB's conduct."

9

(Countercl. ¶ 42).  The question is whether he has pleaded facts

sufficient to support a claim for intentional infliction of

emotional distress (IIED).  The Vermont Supreme Court first

recognized the tort of IIED in *Sheltra v. Smith*, 392 A.2d 431,

432 (Vt. 1978).  Four elements are necessary to establish a

prima facie case for IIED:  "outrageous conduct, done

intentionally or with reckless disregard of the probability of

causing emotional distress, resulting in the suffering of

extreme emotional distress, actually or proximately caused by

the outrageous conduct."  *Id*. at 433 (citing *Spackman v. Good*,

245 Cal. App. 2d 518, 530, 54 Cal. Rptr. 78 (1966)).  Moreover,

"[a] plaintiff's burden on a claim of IIED is a heavy one.  The

conduct must be so outrageous in character and so extreme in

degree as to go beyond all possible bounds of decent and

tolerable conduct in a civilized community and be regarded as

atrocious and utterly intolerable."  *Delude v. Fletcher Allen*

*Health Care, Inc.*, 807 A.2d 390, 398 (Vt. 2002) (internal

quotation marks and citations omitted).  "It is for the court to

determine as a threshold question whether a jury could

reasonably find that the conduct at issue meets this test."

*Jobin v. McQuillen*, 609 A.2d 990, 993 (Vt. 1992) (citing

Restatement (Second) of Torts § 46, com. h).

    The Counterclaim does not specifically identify the conduct

that caused Ciolek's emotional distress.  Accordingly, the Court

will examine each instance of conduct alleged in the Counterclaim which could conceivably give rise to a claim of IIED. In Count I of the Counterclaim, Ciolek alleges that he "was subjected to harassment, hostility and threats against his person from GMB for engaging in protected activities." (Countercl. ¶ 22.) As a general matter, the Vermont Supreme Court does not "extend[] liability to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Denton v. Chittenden Bank*, 655 A.2d 703, 706 (Vt. 1994) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)). However, in the employment context, the Court has held that "if the manner of termination [of an employee] evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis [the employee], it may provide grounds for" a claim of IIED. *Crump v. P&C Food Markets Inc.*, 576 A.2d 441, 448 (Vt. 1990). In *Crump*, the court found a claim of IIED was supportable where the plaintiff alleged that his employer, "summoned [him] to a lengthy meeting without notice, continued the meeting without a break for rest or food, repeatedly badgered him to amend and sign a statement, and that plaintiff did not feel free to leave the meeting." *Id*. at 449.

   *Crump* is distinguishable from the present case for two reasons. First, *Crump* dealt with abuse of authority in the context of a termination. Ciolek, however, voluntarily resigned

his position.  Second, "harassment, hostility and threats

against one's person" do not amount to extreme and outrageous or

oppressive conduct, or abuse of a position of authority.  In

*Ploof v. Brooks Drug Inc.*, CIV. A. No. 89-270, 1991 WL 497170

(D. Vt. Aug. 28, 1991), the District Court, applying Vermont

law, held that "extreme" verbal abuse and threatening gestures

by an employer were insufficient to support an IIED claim

because that conduct "consisted of nothing more than the mere

insults, indignities, and threats specifically referred to in

the Restatement."  *Ploof*, 1991 WL 497170 at *7.  Thus, Ciolek's

allegations of "harassment, hostility, and threats" are

insufficient as a matter of law to support an IIED claim.

Next, in Count II of the Counterclaim, Ciolek alleges that

he "suffered adverse actions from GMB, including GMB's

commencement of [a] lawsuit, which is retaliatory in nature."

The suggestion of mere "adverse actions" is insufficient to

support an inference that GMB engaged in outrageous conduct.

Similarly, it cannot be said that the filing of a lawsuit goes

"beyond all possible bounds of decent and tolerable conduct in a

civilized community."  Even assuming, *arguendo*, that GMB's

lawsuit is retaliatory in nature, the conclusion is the same

because "conduct is not outrageous merely because defendant

acted with tortious or criminal intent."  *Fromson v. State*, 848

A.2d 344, 349 (Vt. 2004).  Thus, Ciolek's allegation of "adverse

12

actions . . . including GMB's commencement of a lawsuit," is also insufficient as a matter of law to support an IIED claim.

Finally, in Count III, Ciolek alleges that "GMB has defamed [him] by making slanderous and libelous statements concerning [him]." As discussed above, the alleged defamatory statements are likely privileged under the law. As such, they cannot be considered "beyond all possible bounds of decent and tolerable conduct in a civilized community." Therefore, the conduct alleged in Count III is insufficient as a matter of law to support an IIED claim.

It is worth noting that "[a]bsent at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct in the workplace, incidents that are in themselves insignificant should not be consolidated to arrive at the conclusion that the overall conduct was outrageous." *Denton*, 655 A.2d at 706. Thus, even if GMB's conduct is considered in its entirety, it remains insufficient to support an IIED claim. Since Ciolek has failed to allege any facts which could support a claim for intentional infliction of emotional distressed, Count IV of the Counterclaim should be dismissed.

## VI. Leave to Amend

The Federal Rules of Civil Procedure dictate that a court "should freely give leave [to amend a complaint] when justice so

requires." Fed. R. Civ. P. 15(a)(2). Moreover, "[w]hen

addressing a *pro se* complaint, a district court should not

dismiss without granting leave to amend at least once when a

liberal reading of the complaint gives any indication that a

valid claim might be stated." *Burke v. Donovan*, No. 1:08-CV-

263, 2009 WL 5214325, *5 (D. Vt. December 29, 2009) (citing

*Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002).

Accordingly, Ciolek is granted leave to file an amended

counterclaim consistent with this opinion.


**CONCLUSION**

For the reasons set forth above, Ciolek's counterclaims are

DISMISSED, but Ciolek is given 30 days to file an amended

Counterclaim.


Dated at Burlington, Vermont this 7th day of March, 2012.


/s/ William K. Sessions III_
William K. Sessions III
District Judge